## BEAN and others *v.* PATTERSON and others.

*(Circuit Court, W. D. Missouri, W. D.* October Term, 1881.)

INSOLVENT DEBTOR—PREFERENCE TO CREDITORS.

> The creditors of a contractor in failing circumstances agreed together to buy his land, and to be interested therein in proportion to their several claims, and a deed therefor was made by the debtor and his wife to two of the creditors for the parties interested in the purchase; the purchase money to be made up of various items of indebtedness of the debtor to the parties interested in the purchase, who had, on their part, to remove the liens of two judgments, which judgments were not paid off, but were assigned to the parties to be held for contingencies. Subsequently an attachment was sued out against the land. *Held,* that the deed from the debtor and wife be set aside, and the deed of sale of the land to one of the defendants, under an assignment of the trust deed of the wife made to her for a debt due her by the husband, be set aside; and that the land attached be sold, and the fund applied, first, to the payment of taxes; next, to the amounts of the judgments, with interest; next, the amount for which the deed of trust was assigned, with interest; and next, the complainants, the amount of their judgment, with interest—the difference between the amounts of the wife's trust deed and the amount for which she assigned it to be reserved for further consideration.

In Equity.

*Botsford & Williams* and *John P. Lewis,* for complainants.

*Vories, Pike & McKillop,* for defendants.

KREKEL, D. J.    The bill in this case alleges that complainants in 1873 contracted with defendant William Miller for work to be done on a railroad then building in Ohio; that during the years of 1873 and 1874 work amounting to $16,000 was done under said contract; that on defendant failing to pay for same suit was instituted by plaintiffs in Atchison county, Missouri, and sundry tracts of land attached by virtue of process sued out; that judgment for $14,276 was obtained in the suit; that execution issued, and $3,257 and costs were collected thereunder; and that the remainder remains unpaid. The bill proceeds to allege further that on examination of the title of the land attached, such as was not sold under the execution spoken of was found to be encumbered by liens, namely, a deed of trust given in 1873 by William Miller, the defendant in the attachment suit, to Patterson, as trustee for his wife, Mary Miller, for $10,000, due in 1876, and a judgment lien of Koontz for $2,071, which encumbrances it is claimed were made and sought to be maintained for the purpose of hindering and delaying the enforcement of liabilities of said William Miller, and specially the complainants, who instituted proceedings in the state courts to remove the clouds upon the title so as to

enable them to sell the land and collect their claims. The proceedings spoken of, instituted in the state courts, were, by change of venue, removed into this court, and constitute the subject-matter in litigation. The bill further charges that, after the institution of their' attachment suit and proceedings to remove the clouds from the title of the land attached, defendants William Miller and wife, on the third day of January, 1876, conveyed the whole of the land in litigation to Horn and Weaver, two of the defendants, but that, aside from them, other defendants were interested therein; that at the time of said conveyance the trust deed heretofore spoken of was pretended to have been assigned to defendant, Saeger, in consideration of $12,-000; that said conveyance and assignment were in fact for the mutual benefit of the defendants named in the bill, and were contrivances to defraud the creditors of William Miller. The bill proceeds further to charge that the Koontz judgment was in reality paid off and satisfied, and kept alive by assignments, so as to encumber and cloud the title. The bill next proceeds to state that when the deed of trust fell due in 1876, Saeger, as assignee thereof, as stated, had the land thereby conveyed sold, and that he, Saeger, became the purchaser thereof, but that in fact said sale and purchase were made under the collusive arrangements charged, for the benefit of the conspirators. The bill thereupon prays that the deed of trust from William Miller to his wife be declared null and void; that the Koontz judgment be declared no lien; and that the defendants interested be made to account for the rents and profits of the land during the time they had the same in possession.

The defendants, answering the bill, say that the transactions had regarding the lands in controversy were all made in good faith and for valuable considerations; deny the intent of hindering or delaying creditors and their liabilities for rent.

The testimony tends to show that William Miller, about 1870, was a man of considerable property, engaged in large undertakings as a contractor; that his own means were not sufficient to carry them on; that his wife owned property worth $14,000, aside from a farm which Miller purchased and had conveyed to her; that to raise funds for his purposes he borrowed money as early as 1870 and 1871, and to secure it Mrs. Miller's property was mortgaged; that the property mortgaged was sold and the debts incurred by Miller paid with the proceeds. The preponderance of the testimony shows the indebtedness from Miller to his wife to have existed long prior to any claim the complainants had against Miller; indeed, the trust deed given by

William Miller to his wife was made and recorded about the time the work under the contract between Miller and the complainants was done. Stress is laid by complainants on the fact that Mrs. Miller assigned her deed of trust to Saeger, one of her husband's creditors, who is charged to be in the combination and conspiracy to defraud, hinder, and delay Miller's creditors. But for this fact there could scarcely be any doubt that Mrs. Miller would be entitled to her deed of trust and the control of it. Is this fact alone, without any proof of her acting in bad faith, to deprive her of the right to dispose of her property as she chooses?

The law allows the wife to hold property and deal with it in her own way, and the rules applicable to dealings generally apply to her. When there are questions as to whether the wife has property of her own, and doubts exist whether the husband is seeking to use the wife's name to cover up his property from creditors, the acts done between husband and wife pertaining to property claimed by the wife will be closely scrutinized to see that their dealings are in good faith. So, also, in cases where the property of the wife, by her consent, is so mixed up and used by the husband that it cannot well be distinguished.

In the case before the court the assignment made of the trust deed to Saeger at most amounts to but a choice among creditors of her husband, for there is not a doubt that Saeger was a *bona fide* creditor of her husband. Nothing went to the wife under the assignment of her deed of trust. It is quite clear from the testimony that in 1876 and long prior thereto Miller was indebted to Saeger, Horn, Weaver, and the Bank of Catasauqua, and, finding that he was in failing circumstances, they agreed together to buy the land in controversy, and to be interested therein in proportion to the amount of their several claims against Miller. They purchased the land at $36,400, and the deed therefor was made by Miller and wife to Horn and Weaver for the parties interested in the purchase. The testimony shows the purchase money to have been made up of various items of indebtedness of Miller to the parties interested in the purchase. The purchasers had to remove the liens of two judgments,—one in favor of Koontz, now amounting to near $4,000, and another to Van Sycle of $700,—which were liens on the land, to make good their title. These judgments were not paid off, but were assigned to the parties interested to be held for contingencies. Six thousand of the $36,400 were retained by the purchasers for the same purpose. What these contingencies were is not difficult to define. An attachment for

$16,100 had been sued out by complainants and levied on the land in controversy. Notice had been filed in the recorder's office of Atchison county of the levy of the attachment at the time of issuing the same. Contingencies arising from this source were to be provided for, and hence the precautions taken. The whole transaction amounts to this: Here are a number of creditors seeking to collect their debts. By the purchase of the farm they get into their possession all the debtor had. The deed of trust and the judgments were liens on the land prior to the attachment, and could not, therefore, be defeated by it. If the attachment prevailed over their deed, the amount of the deed of trust and moneys advanced on the judgment would be refunded, so that nothing could be lost in that direction, but something might be saved, if the farm sold for more than the liens, debts, and the attachments.

This being the condition of the case, the court sees no difficulty in arriving at a proper adjustment of the matter. The deed from Miller and wife to Horn and Weaver, dated January 3, 1876, will be set aside and held for naught. Saeger, as assignee of the trust deed of Mrs. Miller, having caused the land to be sold under the trust deed, himself becoming the purchaser and taking a deed therefor, that deed will be set aside and for naught held. The case will be referred to a master to take an account for rents since the possession taken under the deed from Miller and wife to Horn and Weaver, and report the value of any permanent improvements or repairs made during the time of their possession, and the amount of taxes paid thereon, and taxes now due, if any. Upon the coming in of the master's report an order of sale will be made for the whole of the land attached, excepting the quarter section sold by the sheriff, the proceeds whereof have been paid to the complainants. The funds will be applied as follows: First, to the payment of unpaid taxes; next, the amounts of the Koontz and Van Sycle judgments, with interest; next, the amount for which the deed of trust was assigned, with interest, (the difference between the amount of Mrs. Miller's trust deed and the amount for which she assigned it to Saeger is reserved for further consideration;) next, the complainants the amount of their judgment, with interest.